UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WILLIAM CURTIS WOOD,<br><br>                           Debtor. | Chapter 11<br><br>Case No. 24-11718 (DSJ) |

**DECISION ON DEBTOR'S MOTION TO ENFORCE AUTOMATIC STAY**

**APPEARANCES:**

**KIRBY AISNER & CURLEY, LLP**
*Counsel to the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
By:    Dawn Kirby

**WEISS ZARETT BROFMAN SONNENKLAR & LEVY, P.C.**
*Counsel to Tamara Fox*
3333 New Hyde Park Road, Suite 211
New Hyde Park, New York 11042
By:    Michael D. Brofman (argued)

**LEE ANAV CHUNG WHITE KIM RUGER & RICHTER LLP**
*Counsel to Tamara Fox*
99 Madison Ave., 8th Floor
New York, New York 10016
By:    Michael M. Yi (argued)
       Judith E. White (on the briefs)

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the motion of Debtor William C. Wood, a physician, to "enforce the automatic stay" as against his spouse, Tamara Fox (also a doctor), with whom Dr. Wood is engaged in long-running matrimonial litigation. Dr. Wood filed a voluntary Chapter 7 petition immediately before a scheduled state-court contempt hearing at which Dr. Fox sought sanctions for Dr. Wood's failure to pay a previously ordered $75,000 in connection with their ongoing

1

divorce. Despite demands by Dr. Wood that she discontinue her pursuit of that relief, after the state court adjourned the contempt hearing to allow submissions as to whether the automatic stay precluded Dr. Fox's application, Dr. Fox persisted in pursuing the contempt order and, having received no opposition from Dr. Wood, the presiding state court entered a contempt order with respect to Dr. Wood's non-payment of the required $75,000.

For reasons discussed below, the Court concludes that Dr. Fox's pursuit of her application after Dr. Wood's bankruptcy filing violated the automatic stay, although only to the limited extent that it failed to limit the requested contempt order's enforceability to non-bankruptcy-estate property. When Debtor's counsel filed this motion there appeared to be less than $2,000 in non-exempt estate property, and subsequently the Chapter 7 Trustee determined that there was no distributable estate property. Because there is no bankruptcy stay of efforts to obtain domestic support obligation payments from non-estate property, Dr. Fox's violation had almost no economic substance. But, given the apparent existence of a small amount of non-exempt estate property at the time of her motion, she nevertheless did violate the stay, and that violation was "willful" as that statutory term is construed by applicable caselaw.

As explained below, that violation entitles Dr. Wood to receive "actual damages" including legal costs that he incurred due to the violation. The damages he seeks are modest here; they are awarded solely to the limited extent described below – in brief, he is entitled to recover legal costs not to exceed $5,000 incurred in bringing his stay enforcement motion, enforceable solely via an offset against unpaid obligations he has previously been held to owe Dr. Fox. In its discretion, the Court declines to award punitive damages.

2

**FACTS**

The Debtor filed for bankruptcy on October 2, 2024. On that date, the state court had scheduled a hearing on Dr. Fox's motion seeking to hold the Debtor in contempt for violating a previous state court order. That previous state court order had, on July 29, 2024, ordered the Debtor to pay $25,000 to Dr. Fox for frivolous conduct during settlement negotiations and $75,000 to her attorneys as interim counsel fees. July 29, 2024 State Court Order, ECF No. 23-4. The state court awarded these interim counsel fees because 1) the Debtor was "the more-monied spouse" and 2) New York Domestic Relations Law § 237(a) "provides a rebuttable presumption that counsel fees be awarded to the less-monied spouse." *Id.*

The state court learned of the Debtor's bankruptcy filing at the October 2, 2024 hearing on the contempt motion, and the state court immediately adjourned that hearing to October 22, 2024. In his bankruptcy case, the Debtor filed his schedules of assets and a list of the property he claimed as exempt on October 16, 2024. *See* Schedules A/B and C, ECF No. 9. No one has challenged the exemptions the Debtor claimed on Schedule C.

According to the Debtor, at the rescheduled state court hearing on Dr. Fox's motion to hold the Debtor in contempt, Dr. Fox's counsel persuaded the state court that deciding the contempt motion would not violate the automatic stay. The state court gave the Debtor the opportunity to object to the motion for contempt and set an October 25, 2024 deadline for filing such an objection. Nov. 4, 2024 State Court Order, ECF No. 23-5. The Debtor filed no objection to the proposed contempt order in state court. *Id.* The state court thereafter issued a decision and order on November 4, 2024, holding the Debtor in contempt for failure to pay the $75,000 in interim attorneys' fees. *Id.* The state court's contempt order did not hold the Debtor in contempt

3

with respect to its prior order that the Debtor pay $25,000 in sanctions for frivolous conduct. *See id.*

On February 28, 2025 at 3:42 PM, the Chapter 7 Trustee reported "that there is no property available for distribution from the estate over and above that exempted by law." *See* Docket. The Debtor, by a motion filed on February 28, 2025 at 4:57 PM, contends that the state court's November 4, 2024 decision and order violated the automatic stay and seeks damages for that violation.

Debtor's motion, ECF No. 19, refers to Exhibits A-E, but does not attach any of them. Instead, the state court order at issue and some of the pre-petition communications relating to the motion appear in ECF No. 18. The objection to the motion, ECF No. 23, also contains numerous documents from the state court litigation.

## THE PARTIES' ARGUMENTS

The Debtor asserts that Dr. Fox's pursuit and obtaining of the November 4, 2024 state court order violated the automatic stay. Dr. Fox puts forth several arguments: 1) the state court could decide whether the automatic stay barred continuing with the contempt motion, 2) the *Rooker-Feldman* doctrine bars this Court from interfering with these state court proceedings, 3) the underlying obligation that the contempt motion sought to enforce counts as a domestic support obligation and the Debtor's post-petition income does not form part of the bankruptcy estate, and 4) there exists no reason to enforce the automatic stay because the Debtor's bankruptcy has nearly concluded. Dr. Fox's counsel in effect argues that because the Debtor cannot discharge domestic support obligations in bankruptcy, the automatic stay does not apply to efforts to collect domestic support obligations. The state court accepted that argument. Although the resulting relief was permissible if limited to non-bankruptcy-estate property, both

4

Dr. Fox and the state court erred by failing to recognize that the automatic stay bars efforts to collect on domestic support obligations from assets of the bankruptcy estate.

## THE AUTOMATIC STAY AND ITS EXCEPTIONS FOR FAMILY COURT ACTIONS

The obligations imposed by the July 29, 2024 state court order are "claims" against the Debtor under 11 U.S.C. § 101(5) because they are rights to payment. The filing of a bankruptcy petition stays:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . .
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and]
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a).

However, the filing of a bankruptcy petition does not operate as a stay, under subsection (a) of Section 362,

> (A) of the commencement or continuation of a civil action or proceeding--
>     (i) for the establishment of paternity;
>     (ii) for the establishment or modification of an order for domestic support obligations;
>     (iii) concerning child custody or visitation;
>     (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or
>     (v) regarding domestic violence; [or]
> (B) of the collection of a domestic support obligation from property that is not property of the estate[.]

*Id.* § 362(b)(2). Neither the Debtor nor Dr. Fox have identified any other exception to the automatic stay that could apply in this situation. Contrary to the assertions of Dr. Fox's counsel, no provision of Section 362(b) excepts all actions to collect non-dischargeable debts from the stay imposed by Section 362(a). Furthermore, because "[t]he automatic stay provision is

5

considered 'one of the fundamental debtor protections provided by the bankruptcy laws,'" *Church Mut. Ins. Co. v. Am. Home Assurance Co.* (*In re Heating Oil Partners, LP*), 422 F. App'x 15, 17 (2d Cir. 2011) (quoting *Eastern Refractories Co. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir. 1998)), the Court declines to follow Dr. Fox's suggestion that the case's late stage makes it unnecessary or inappropriate to entertain Dr. Wood's motion.

### A. The State Court's (Non-Exclusive and Non-Binding on This Court) Power to Define the Reach of the Automatic Stay, and Whether the Stay Is Implicated Here

Dr. Fox is correct that state courts have authority to decide whether the automatic stay bars relief being requested in those courts, and, further, that the *Rooker-Feldman* doctrine ordinarily precludes collateral challenges to state-court determinations, but she overlooks other controlling principles. Most fundamentally, even if another court decides that the automatic stay does not bar an action, the Bankruptcy Court retains ultimate authority over that question notwithstanding *Rooker-Feldman*. "Even assuming that the state courts have concurrent jurisdiction over stay violations, those judgments must bow to the plenary power vested in the federal courts over bankruptcy proceedings." *In re Killmer*, 501 B.R. 208, 214 (Bankr. S.D.N.Y. 2013) (citing *Gruntz v. Cnty. of Los Angeles* (*In re Gruntz*), 202 F.3d 1074, 1083 (9th Cir. 2000)). "[C]ourts have uniformly held that when a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (i.e., stays) the proceedings." *Id.* (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) (citing *In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 347 (2d Cir. 1985))).

6

"If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void *ab initio.*" *Id.* at 215 (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001)). "[A]n act entered in violation of the stay is void whether or not a party makes a motion to declare it so." *Id.* at 212 (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc.* (*In re 48th St. Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987)). "If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause." *Id.* at 215 (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001)). "Ordinarily, the *Rooker–Feldman* doctrine bars lower federal courts from reviewing state court decisions. However, there is an exception to this doctrine. A bankruptcy court can 'override' a state court judgment if the state court judgment is void *ab initio.*" *Id.* at 213 (citing *In re Dabrowski,* 257 B.R. 394, 405-06 (Bankr. S.D.N.Y. 2001)).

Thus, if the state court's action violated the automatic stay, that court's order cannot help Dr. Fox resist the motion before this Court, as this Court possesses ultimate authority to decide whether the stay was violated.

Here, aspects of the November 4, 2024 state court contempt order did violate the automatic stay. The pursuit and entry of that order amounted to an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The stay exception for orders that establish or modify a domestic support obligation cannot protect the November 4, 2024 state court order. The pre-bankruptcy July 29, 2024 state-court decision and order had already established the obligation in question, and the November 4, 2024 state court order did not modify it but rather represented an attempt to

7

enforce it. *See id.* § 362(b)(2)(A)(ii). And, as Debtor points out, contempt proceedings to enforce domestic support obligations may violate the automatic stay if they do not exclude enforcement against bankruptcy estate property. *See Russell v. Caffey* (*In re Caffey*), 384 F. App'x 882, 886–87 (11th Cir. 2010); *Moore v. Nunnari* (*In re Moore*), No. 08-11498, 2009 WL 1616019, at *5 (Bankr. N.D. Ohio Mar. 20, 2009) ("[A]ctions to enforce or collect existing domestic support obligations are only excepted from the automatic stay if the collection is from property that is not property of the debtor's estate. Thus a creditor's use of civil contempt proceedings to collect unpaid prepetition domestic support obligations may well constitute a violation of the automatic stay." (citing 11 U.S.C. § 362(b)(2)(B))). The order sought by Dr. Fox and entered by the state court did not exclude property of Dr. Wood's bankruptcy estate from its reach.

Notwithstanding the slightly hedged language in *Moore*, the Court concludes that contempt applications aimed at collecting a domestic support obligation in a way that reaches (or fails to carve out) estate property violates the stay. Thus, for the November 4, 2024 state court contempt order to have not violated the automatic stay, that order would have needed to be limited to directing the collection of a domestic support obligation from property that is not property of the Debtor's bankruptcy estate. *See* 11 U.S.C. § 362(b)(2)(B). This order contained no such limitation.

### B. These Obligations Count as Domestic Support Obligations

The preceding discussion rests on the idea that the $75,000 payment obligation at issue constitutes a domestic support obligation and thus might to some extent be excepted from the automatic stay. Dr. Wood challenges this premise, but this Court agrees with Dr. Fox and the state court that the $75,000 payment ordered by the state court prepetition constitutes a domestic support obligation.

8

The Bankruptcy Code defines a "domestic support obligation" as "a debt that accrues before, on, or after the date of the order for relief . . .that is":

> (A) owed to or recoverable by--
> > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
> > (i) a separation agreement, divorce decree, or property settlement agreement;
> > (ii) an order of a court of record; or
> > (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

*Id.*. § 101(14A). "It is well-settled that attorneys' fees awarded to a spouse in connection with a divorce proceeding are domestic support obligations within the meaning of section 101(14A)." *In re Kalsi*, 631 B.R. 369, 371-72 (Bankr. S.D.N.Y. 2021) (ruling that an award of counsel fees "based on the matrimonial court's determination that the Debtor is the monied spouse," counted as a domestic support obligation under 11 U.S.C. § 101(14A)).

Here, the state court required the Debtor to pay $75,000 in attorneys' fees "in connection with," *id.* at 371, the Debtor's divorce proceeding based on the court's conclusion that the Debtor is "the more-monied spouse," July 29, 2024 State Court Order. Therefore, the payment obligation is a domestic support obligation under the Bankruptcy Code. The November 4, 2024 state court order does not concern the $25,000 sanction the state court had previously ordered the Debtor to pay for frivolous conduct in settlement negotiations. For this reason, under *In re Kalsi*, the whole of the November 4, 2024 state court order pertains to "the collection of a domestic support obligation." 11 U.S.C. § 362(b)(2)(B). Thus, the question of whether the November 4,

9

2024 state court order violates the automatic stay comes down to whether it only seeks to collect these domestic support obligations from property other than property of the bankruptcy estate.

As noted and as further explained below, the order contained no such limitation, and, at the time of that state court order, there appeared to be a small amount of non-exempt estate property that should have been excluded from the reach of the state-court order.

### C. Whether Dr. Fox Sought to Collect Domestic Support Obligations from Property of the Debtor's Bankruptcy Estate

Most but not all of Dr. Wood's property was "exempt" and therefore not part of his bankruptcy estate. A debtor's bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "When a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property of the bankruptcy estate, subject to the debtor's right to reclaim certain property as 'exempt.'" *Schwab v. Reilly*, 560 U.S. 770, 774 (2010) (citing 11 U.S.C. §§ 522(*l*), 541(a)). "The debtor shall file a list of property that the debtor claims as exempt . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). "When a debtor properly exempts a property interest under § 522, the exemption withdraws that property interest from the estate . . . . Such an exempted property interest revests with the debtor and no longer belongs to the estate." *In re Waddell*, No. 24-11769 (JLG), 2025 WL 957733, at *6 n.19 (Bankr. S.D.N.Y. Mar. 28, 2025) (quoting *United States v. Warfield* (*In re Tillman*), 53 F.4th 1160, 1169 (9th Cir. 2022)). "It is well-settled law that the effect of this self-executing exemption is to remove property from the estate and to vest it in the debtor." *Bell v. Bell* (*In re Bell*), 225 F.3d 203, 215 (2d Cir. 2000) (citing, *inter alia*, *Owen v. Owen*, 500 U.S. 305, 308 (1991)).

10

The Debtor's schedules of assets and liabilities reveal that the Debtor believed at most $7,602.21 in ascertained value remained in his bankruptcy estate after he claimed his exemptions. Of this, $5,928.00 represented money held by a landlord as a security deposit. That leaves a remainder of just $1,674.21 worth of asserted estate property that, at the time of Dr. Fox's contempt motion, could have faced seizure in satisfaction of the contempt obligation she was pursuing. While the vast majority of the Debtor's assets was assertedly exempt and therefore outside the bankruptcy estate, the reported estate as it existed on November 4, 2024 was not a null set. Thus, the state-court order entered on November 4, 2024 violated the automatic stay by failing to expressly limit its reach to non-estate property. *See Brown v. Chesnut* (*In re Chesnut*), 422 F.3d 298, 303 (5th Cir. 2005) ("The policy and structure of the Bankruptcy Code suggest that the stay covers at least some arguable property. . . . [I]n the face of uncertainty or ambiguity, courts should presume protection of arguable property." (citing *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC* (*In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*), 142 F.3d 631, 637 (3d Cir. 1998); 3 Collier on Bankruptcy ¶ 362.03 (15th ed. 2003) (noting the stay's "extremely broad" scope))). Dr. Fox and the state court erred when 1) presuming that the automatic stay does not apply to collection of nondischargeable debts—it does—and 2) failing to write into the state court order a limitation specifying that Dr. Fox could collect the domestic support obligations only from property other than property of the bankruptcy estate.

**REMEDY**

Having concluded that a stay violation has occurred, albeit one with marginal economic significance, the question becomes what remedy to impose. For reasons detailed below, the Court awards actual damages and declines in its discretion to award punitive damages.

11

"Section 362(k) of the Bankruptcy Code directs that, subject to limited exceptions that do not apply here, 'an individual injured by any willful violation' of the automatic stay 'shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.'" *In re Resnicow*, No. 24-10354 (DSJ), 2024 WL 1773433, at *6 (Bankr. S.D.N.Y. Apr. 24, 2024) (quoting 11 U.S.C. § 362(k)(1)). "Willfulness in this setting is understood as 'any deliberate act taken in violation of a stay, which the violator knows to be in existence.'" *In re Crawford*, 476 B.R. 83, 86 (S.D.N.Y. 2012) (quoting *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.* (*In re Crysen/Montenay Energy Corp.*), 902 F.2d 1098, 1105 (2d Cir. 1990)); *see also In re Ebadi*, 448 B.R. 308, 320 (Bankr. E.D.N.Y. 2011) ("A deliberate action that violates the automatic stay, taken while the violator knew that the stay was in effect, justifies an award of actual damages, with no further showing necessary."). "This standard 'encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations. That is, Congress intended in § 362 to prevent self-help, or shooting first and aiming later.'" *In re Resnicow,* 2024 WL 1773433, at *6 (quoting *In re Congregation Birchos Yosef*, 535 B.R. 629, 635 (Bankr. S.D.N.Y. 2015)).

Applying *Crawford*, which holds that willfulness exists when an actor who knows the stay is in force deliberately acts in a manner that violates the stay, the Court can only conclude that Dr. Fox through her state-court counsel committed a willful violation of the automatic stay. Her actions in pursuing post-petition state-court relief were deliberate and at least her counsel knew the stay was in effect. Debtor's counsel informed Dr. Fox's counsel of the stay, and Dr. Fox's counsel nonetheless sought the November 4, 2024 order from the state court. *See* Letter from Judith White to Dawn Kirby (October 9, 2024), ECF No. 18-4. Applying this governing

12

authority, the seeming sincerity of Dr. Fox's attorney's mistaken belief that the stay did not restrict her ability to seek relief does not rescue her course of conduct from the realm of willful stay violations.

As noted, where a willful stay violation has occurred, Section 362(k)(1) requires that the court "shall" award "actual damages, including costs and attorneys' fees" associated with the violation. Here, Dr. Wood's "actual damages" are slight. He suffered no out-of-pocket loss resulting from the November 4, 2024 state court order, no-one has suggested that state court order was ever enforced, and that state court order has now been revealed to make possible only stay-exempt collection of domestic support obligations against non-estate property. Thus, the only possible damage or cost Dr. Wood may have incurred is legal fees for bringing his stay enforcement motion. His attorney at argument reported that those fees will total less than $5,000. She further acknowledged that the probable outcome of a ruling in Dr. Wood's favor would simply be the creation of an offsetting entitlement that could be applied against a payment that the state court has directed Dr. Wood make to Dr. Fox (or other domestic support obligations that may be imposed by the state court). Dr. Fox did not object to the accuracy or reasonableness of this asserted "actual damage" computation if the Court were to agree with Dr. Wood's legal position.

The Court questions whether Dr. Wood can fairly be said to have incurred any "actual damages" at all in the circumstances present here. As noted, he incurred no out-of-pocket expense through any improper collection. No estate property has been shown to have been attached or required to be paid on account of the state-court order. All that remains is his counsel's legal fees incurred bringing the motion to enforce the stay. Also, Debtor's motion was not even filed until after the Trustee reported that the estate contained no distributable assets –

13

24-11718-dsj    Doc 27    Filed 05/13/25    Entered 05/13/25 14:04:17    Main Document
Pg 14 of 16


thus making clear that the violation had no economic substance and could have been entirely avoided by adding a simple sentence to the state-court order mandating that any enforcement of the order absent relief from this Court be limited to non-estate property. Still, the fact of the violation remains despite its limited and marginal nature, the statute instructs that the debtor "shall" recover "actual costs," and Dr. Fox has opposed neither the amount claimed by Dr. Wood nor the explanation that the proper measure of those costs is the legal costs associated with bringing the stay enforcement motion. Accordingly, the Court awards actual costs to Dr. Wood in the amount of his counsel's fees incurred in bringing this motion, with those fees (a) to be documented along with a proposed order to be submitted by Dr. Wood in an amount not to exceed $5,000 as his counsel represented, and (b) to be recoverable not through a cash payment, but rather solely through an offset as against payment obligations imposed on Dr. Wood in favor of Dr. Fox by the state court. It would be inequitable, disproportionate to the impact of the stay violation, and counter to the state court's directives in the matrimonial proceeding to require Dr. Fox to make a cash payment to Dr. Wood even as Dr. Wood seemingly continues not to make long-required payments to Dr. Fox as part of their matrimonial proceeding.

The Court also has discretion to award punitive damages, but doing so here would be inappropriate and inequitable for several reasons. First, by the time Debtor filed this motion, the Chapter 7 Trustee had filed the Report of No Distribution, reflecting the Trustee's conclusion that the bankruptcy estate had no distributable assets. *See* Docket, Feb. 28, 2025. Therefore, although when Dr. Fox pursued her state-court contempt motion there appeared to be a small amount of estate property, as events played out it appears almost certain that her motion would not affect any estate assets, while she was entitled to pursue relief had she only thought to limit her application to non-estate property of the Debtor. Debtor's circumstances and subsequent

14

events make clear that that was virtually the entire practical effect of the order Dr. Fox sought and obtained. Second, while the state court's November 4, 2024 order is void, that invalidity in no way invalidates the prepetition orders of the state court that initially imposed the $75,000 payment obligation, and the November 4, 2024 state court order would have been consistent with the stay if its enforceability were limited to non-estate property. Further, Debtor's very commencement of this case appears to be a disfavored use of bankruptcy processes as a weapon in his matrimonial proceeding against his wife. *See* Mot. ¶ 10; *Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir. 1992) ("[T]here is a danger that bankruptcy will be used as a weapon in an on-going battle between former spouses over the issues of alimony and child support or as a shield to avoid family obligations. It is important that 'the bankruptcy code not be used to deprive dependents, even if only temporarily, of the necessities of life.'" (quoting *Caswell v. Lang,* 757 F.2d 608, 610 (4th Cir. 1985))). Given the marginal economic significance of the stay violation, the predominantly stay-excepted nature of the relief sought, and the seemingly genuine misunderstanding of Dr. Fox's counsel of the need for a limitation on the reach of the relief she sought, the Court declines to impose punitive damages here.

## **CONCLUSION**

For the reasons stated above, the Court grants the Debtor's motion to enforce the automatic stay. The Court awards actual damages for its violation, those actual damages 1) being the fees and costs incurred by the Debtor in bringing this motion in an amount not to exceed $5,000 and 2) to be satisfied solely as an offset against the Debtor's state-court-ordered payment obligations to Dr. Fox in their matrimonial proceeding. For the avoidance of doubt, in no circumstances shall this award be required to be paid in cash by Dr. Fox. On or before May 23, 2025, the Debtor shall file a proposed order along with a showing of fees and costs incurred in

15

bringing this motion, preferably on consent of Dr. Fox's counsel. If such consent has not been obtained, Dr. Fox shall have until May 30, 2025 to respond. The Court will then enter an appropriate order or, if necessary, convene a further hearing.

    It is so ordered.


Dated: New York, New York
       May 13, 2025

                              *s/ David S. Jones*
                              Honorable David S. Jones
                              United States Bankruptcy Judge