July 4, 2025

## Amicus Letter in Support of Dr. Sanjay Om Tewari and Dr. William Curtis Wood
### Re: In re Sanjay Om Tewari / In re William Curtis Wood

**To:**
Chief United States Bankruptcy Judge Martin Glenn
United States Bankruptcy Judge David S. Jones

**Dear Honorable Judges Glenn and Jones,**

We respectfully submit this letter as amici in support of the debtors, **Dr. Sanjay Om Tewari** and **Dr. William Curtis Wood**, both of whom have been subject to contentious matrimonial proceedings previously overseen by **Judge Kathleen Waterman-Marshall** and now reassigned to **Judge Linda Capitti** in the New York State Supreme Court, Matrimonial Part.

We write to highlight concerns that transcend individual family law disputes and implicate broader issues at the intersection of family court practices, professional misconduct, and bankruptcy protections. We urge this Honorable Court to consider how systemic matrimonial court practices—particularly those involving judicial overreach, misuse of statutory interpretation, and enabling of financially coercive litigation—have played a significant role in forcing both Dr. Tewari and Dr. Wood into bankruptcy.

### I. Judicial Misconduct and Abuse of Discretion by Judge Waterman-Marshall

As your Honorable Courts are aware, Judge Waterman-Marshall was found to have violated the automatic stay in both bankruptcy proceedings:

- On April 29, 2022, Chief Judge Glenn granted a preliminary injunction against enforcement of Judge Waterman-Marshall's contempt order and arrest warrant, stating that the debtor was entitled to protection under the automatic stay.

- On May 13, 2025, Judge David S. Jones found that Judge Waterman-Marshall's actions willfully violated the automatic stay, stating:

    "Violation was 'willful' as that statutory term is construed by applicable caselaw … aspects of the November 4, 2024 contempt order did violate the automatic stay …"

These findings of willful violations are especially troubling in light of Judge Waterman-Marshall's prior professional and personal experience with bankruptcy law:

1. She has filed for bankruptcy herself on at least two occasions (1996 and 2010).

1

2. As an attorney, she previously litigated matters involving the automatic stay and is therefore well-acquainted with its meaning and legal force.

It is therefore our belief that these violations were not due to negligence or oversight, but rather reflect a pattern of deliberate judicial overreach.

## II. Systemic Bias Against Fathers in Matrimonial Proceedings

Both Dr. Tewari and Dr. Wood are among a growing class of litigants—predominantly fathers—who report experiencing systemic bias in New York matrimonial courts. In both cases, the litigants were subjected to aggressive legal strategies that leveraged controversial and, at times, unsubstantiated claims to justify severe financial penalties, loss of parental rights, and coerced settlements.

Of particular concern is Judge Waterman-Marshall's documented approach to applying New York's "bad actor" statute in ways that disproportionately impact fathers. As she has stated in her own public biography:

> "Justice Waterman-Marshall was the first judge to interpret and apply an amendment to the Domestic Relations Law that now requires the court to consider domestic violence in the distribution of marital assets, thus redressing ... emotional and physical abuse and financial coercive control…"

While the legislative intent of this statute is laudable, its application has in many instances, including those of Dr. Tewari and Dr. Wood, been weaponized without sufficient factual foundation, allowing litigants represented by certain law firms to obtain unjust outcomes.

## III. Role of High-Conflict Litigation Firms and Financial Exploitation

We also note the roles of the law firms representing the spouses in these cases—namely, **Blank Rome LLP** and **Lee Anav Chung White Kim Ruger & Richter LLP (LACWKRR)**. Both are known within the legal community for deploying high-conflict litigation strategies, often pursuing protracted proceedings that exhaust marital estates and force opposing parties into unsustainable financial positions.

In multiple instances, Blank Rome and LACWKRR have:

- Advanced narratives of domestic abuse or parental unfitness with little to no evidentiary support,
- Sought and received exorbitant legal fees,
- Pursued enforcement actions that interfere with bankruptcy protections,
- Benefited from judicial rulings that appear aligned more with enabling fee collection than the interests of justice or child welfare.

We respectfully submit that such practices contribute to what amounts to a financial funneling scheme, wherein judges enable certain firms to be paid even at the expense of bankrupting one party and harming children in the process.

### IV. The Need for Scrutiny and Structural Accountability

Given the gravity of these issues—and the reputational and professional damage suffered by the debtors as a result—we urge your Honorable Courts to continue to scrutinize the conduct of Judge Waterman-Marshall and the legal machinery that enabled these harms.[1] The violation of the automatic stay is not merely a procedural issue; it reflects a systemic failure in which the family court process is leveraged to extract wealth under color of law, even when doing so contravenes fundamental bankruptcy protections.

We believe that the bankruptcy court stands as one of the few remaining safeguards for these individuals, whose parental rights, reputations, and financial futures have been put at risk due to judicial and legal misconduct in state court.

### V. Conclusion

In sum, we ask this Court to take into account:

- The **willful and repeated violations** of the automatic stay by a judge with knowledge of its legal significance;
- The broader **pattern of inequitable treatment** and financial coercion in these matrimonial cases;
- The **institutional failures** that allowed these outcomes to occur under judicial supervision.

We thank the Court for its careful attention to these matters and trust that it will continue to enforce the protections that bankruptcy law is intended to afford especially where those protections stand between vulnerable litigants and judicial abuse.

Copies to:

Hon. Rowan D. Wilson
Hon. Dianne T. Renwick
Hon. Suzanne Adams
NYS Commission on Judicial Conduct

---

[1] In both Dr. Tewari's and Dr. Wood's cases, Blank Rome and LACWKRR engaged in financially aggressive litigation strategies that contributed directly to the economic duress culminating in the bankruptcy filings.

3